RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0243p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

WILLIA DEAN PARKER; ROSE BANKS,

*Plaintiffs-Appellants*,

*v.*

MERVYN WINWOOD; STEVE WINWOOD; KOBALT
MUSIC PUBLISHING,

*Defendants-Appellees*.

No. 18-5305

———————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:16-cv-00684—Jon Phipps McCalla, District Judge.

Argued: October 18, 2018

Decided and Filed: September 17, 2019

Before: GRIFFIN and DONALD, Circuit Judges; BERTELSMAN, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Taylor A. Cates, BURCH, PORTER & JOHNSON, PLLC, Memphis, Tennessee, for Appellants. Jay S. Bowen, SHACKELFORD BOWEN MCKINLEY NORTON, LLP, Nashville, Tennessee, for Appellees. **ON BRIEF:** Taylor A. Cates, Lani D. Lester, BURCH, PORTER & JOHNSON, PLLC, Memphis, Tennessee, for Appellants. Jay S. Bowen, Lauren Kilgore, Rebekah L. Shulman, SHACKELFORD BOWEN MCKINLEY NORTON, LLP, Nashville, Tennessee, for Appellees.

GRIFFIN, J., delivered the opinion of the court in which BERTELSMAN, D.J., joined. DONALD, J. (pp. 13–21), delivered a separate dissenting opinion.

———————————

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.

Plaintiffs Willia Dean Parker and Rose Banks sued defendants Mervyn Winwood, Steve Winwood, and Kobalt Music Publishing for copyright infringement. The district court found that plaintiffs failed to submit admissible evidence showing that Steve copied plaintiffs' protected work—one element of an infringement claim—so it granted judgment in his and Kobalt's favor. The court also found that it lacked personal jurisdiction over Mervyn, who resides in the United Kingdom, and therefore dismissed him from the case. Plaintiffs contest both rulings. We affirm.

I.

In 1965, in Memphis, Tennessee, Willia Dean Parker and Homer Banks wrote the song *Ain't That a Lot of Love* and registered it with the United States Copyright Office. The very next year, in London, England, brothers Mervyn and Steve Winwood wrote the song *Gimme Some Lovin'*. They were members of the Spencer Davis Group, a band that contracted with Island Records to market its music. Island registered the song with the Copyright Office as well.

*Ain't That a Lot of Love* fell flat. But *Gimme Some Lovin'* roared up the charts, reaching the second spot in the United Kingdom and later the seventh spot in the United States.

Fifty-one years later, Parker and Banks's wife, Rose, sued the Winwoods and Kobalt Music Publishing—the company that exploits Steve's copyright interest in *Gimme Some Lovin'*—in the United States District Court for the Middle District of Tennessee. When writing *Gimme Some Lovin'*, plaintiffs claimed, the Winwoods lifted the bass line from *Ain't That a Lot of Love*. And that move, plaintiffs asserted, entitled them to statutory damages for copyright infringement under 17 U.S.C. § 504, as well as other relief.

Steve Winwood and Kobalt moved for summary judgment, arguing that Steve had not infringed plaintiffs' copyright because no one in the Spencer Davis Group had heard *Ain't That a*

*Lot of Love* before writing *Gimme Some Lovin'*.  In response, plaintiffs asked the district court to consider several documents they claimed contained direct evidence of copying.  They also argued that there was a twenty-one-day window—between *Ain't That a Lot of Love*'s debut in the United Kingdom and the commercial release of *Gimme Some Lovin'*—during which the Spencer Davis Group could have copied the bass line.  In reply, Steve and Kobalt claimed that plaintiffs' direct evidence of copying was inadmissible under the rule against hearsay.  *See* Fed. R. Evid. 802.  The district court granted the motion.  It noted that Steve and Kobalt had submitted affidavits in support of their claim that no one in the band had heard *Ain't That a Lot of Loving* before writing *Gimme Some Lovin'*.  The court also ruled that the documents plaintiffs sought to rely on to show direct evidence of copying were inadmissible under the rule against hearsay, *see* Fed. R. Evid. 801, 802, which meant they failed to produce any evidence showing that Steve copied *Ain't That a Lot of Love*.

Mervyn Winwood then moved to dismiss the case against him, arguing that personal jurisdiction was lacking.  In support of his motion, he submitted a declaration in which he stated that he was "a lifelong British subject"; that he had never lived or worked in the United States; that he had never even been to Tennessee; and that he had never done business, had a mailing address, or had a bank account in Tennessee, either.  In response, plaintiffs argued that Mervyn had subjected himself to the jurisdiction of courts in Tennessee in two ways.  First, they said, he purposely infringed their copyright and therefore willfully harmed Tennessee residents.  And second, they claimed, he contracted with Island Records to distribute his infringing song, which made its way to Tennessee.  The district court granted this motion as well, ruling that Mervyn had not established enough of a connection with Tennessee to exercise jurisdiction over him without depriving him of due process.

Plaintiffs appealed both rulings.

## II.

We begin with the district court's grant of summary judgment in favor of Steve Winwood and Kobalt, which we review de novo.  *SEC v. Zada*, 787 F.3d 375, 380 (6th Cir. 2015).

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

Because plaintiffs brought a copyright-infringement claim, to make it to trial they needed to create factual disputes over two things:  whether they owned a copyrighted creation and whether Steve copied it.  *Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009).  Only the second is at issue.

"Direct evidence of copying is rare," and in its absence, a plaintiff can create an inference of copying if she can show both that the defendant had access to the work and that the original and allegedly infringing work are *substantially* similar.  *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999).  And even when a plaintiff is unable to prove access, she can establish copying by showing a "*striking* similarity" between her work and the allegedly infringing one.  *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 317 (6th Cir. 2004) (emphasis added).

A.

On appeal, plaintiffs argue that the district court erred when it ruled that four documents they sought to rely on were inadmissible under the rule against hearsay.  Those documents *were* admissible, plaintiffs claim, and summary judgment was inappropriate because they contained direct evidence of copying.  Whether proffered evidence is hearsay is an issue we review de novo. *United States v. Jinadu*, 98 F.3d 239, 244 (6th Cir. 1996).

The first document plaintiffs claim is admissible is a one-page excerpt from Timothy White's 1990 book, titled *Rock Lives: Profiles and Interviews*.  That excerpt, plaintiffs assert, contains portions of an interview with Spencer Davis in which Davis said *Gimme Some Lovin'* used *Ain't That a Lot of Loving*'s bass riff.  And the book falls under the ancient-documents exception to the rule against hearsay, they contend, which means the district court should have considered it as evidence.  *See* Fed. R. 803(16).  Although the book might well be an ancient document, Davis's statement is not.  And because plaintiffs seek to use Davis's statement for its truth, it is inadmissible unless they can show that it is not hearsay, *see* Fed. R. Evid. 801(d), or that it falls under an exception to the rule against hearsay, *see* Fed. R. Evid. 803; *see also* Fed. R.

Evid. 802, 805.  But plaintiffs do not contend that Davis's statement, as it appears in White's book, is admissible.  And we are not in the business of developing parties' arguments for them. *See My Imagination, LLC v. M.Z. Berger & Co.*, 726 F. App'x 272, 276 (6th Cir. 2018).  Thus, we find that the district court correctly excluded the document as hearsay.

The second document plaintiffs seek to rely on is more difficult to describe.  Plaintiffs characterize it as "Timothy White's 1988 *Billboard Magazine* interview with Spencer Davis . . . as republished . . . on SteveWinwood.com."  That description appears at least partially accurate.  The document includes the phrase "By Timothy White," contains the date "November 23, 1988," and has the type of exposition one might find in a magazine.  It also purports to quote Spencer Davis.  Yet the document is obviously not just a copy of a magazine article.  The document is in black and white, the text is faded, and the size is standard for printer paper.  A menu appears at the top of the first page; its options include "Home"; "news"; "Bio"; "media"; "Live"; "Music"; "Jukebox"; and "store."  The url "www.stevewinwood.com/news/1414" appears at the bottom of each page.  And the date "2/28/2017" appears at the bottom of each page as well.  The document also contains a title: "'Coming to America' Musician, Nov. 1988." Perhaps the best way to describe the document, then, is to call it a scan, of a printout, of the webpage www.stevewinwood.com/news/1414, as it appeared on February 28, 2017, that seems to include a reproduction of an article, by Timothy White, that itself appeared in the November 1988 copy of *Musician* magazine (not *Billboard* magazine).  Like the first document, this document seems to include portions of an interview with Spencer Davis in which Davis said *Gimme Some Lovin'* used *Ain't That a Lot of Loving*'s bass riff.

Plaintiffs argue that the webpage printout is not hearsay because it is a party admission under Federal Rule of Evidence 801(d)(2)(A) or (B).  Subsection (d)(2)(A) provides that a statement a proponent offers against an opposing party is not hearsay if the opposing party made the statement in an individual or representative capacity.  Fed. R. Evid. 801(d)(2)(A).  Although the webpage itself might be an opposing-party statement (assuming Steve Winwood created the page), it contains two levels of statements that fall outside subsection (d)(2)(A):  the article by Timothy White and Spencer Davis's statements within that article.  Steve Winwood is neither Timothy White nor Spencer Davis, so their statements are not his statements.

Then there is subsection (d)(2)(B), which provides that a statement a proponent offers against an opposing party is not hearsay if the opposing party manifested its adoption of the statement or its belief that the statement is true. Fed. R. Evid. 801(d)(2)(B). Plaintiffs contend that Steve Winwood manifested his adoption of the entire article—including Davis's statement that *Gimme Some Lovin'* used *Ain't That a Lot of Loving*'s bass riff—by reproducing it on his website. But as the Supreme Court has noted, "[m]erely hosting a document on a Web site does not indicate that the hosting entity adopts the document as its own statement or exercises control over its content." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 148 n.12 (2011). To be sure, *Janus* involved securities-fraud liability, not the Federal Rules of Evidence. 564 U.S. at 148. But plaintiffs have given us no reason to depart from the Court's sound logic. Although posting a statement on a webpage might *imply* one's general agreement with it, Rule 801(d)(2)(B) requires an actual "manifest[ation]" of one's adoption of a statement or belief in it.

Because plaintiffs have not shown that the webpage, Timothy White's purported article, and Spencer Davis's statements were not hearsay or fell under exceptions to the rule against hearsay, and because they seek to use Davis's statement for its truth, the district court correctly excluded the document as hearsay. *See* Fed. R. Evid. 801, 802, 805.

The third and fourth documents plaintiffs claim were admissible are similar to the second. One appears to be a scan, of a printout, of the webpage www.stevewinwood.com/news/5765, as it appeared on February 13, 2017, that seems to include a reproduction of an article, by Johnny Black, that itself appeared in the May 1997 copy of *Mojo* magazine. And the other appears to be a scan, of a printout, of the webpage www.stevewinwood.com/news/1421, as it appeared on February 28, 2017, that seems to include a reproduction of an article, by Patrick Humphries, that itself appeared in the June 1994 copy of *RH* magazine. Like the second document, they contain statements—one from Spencer Davis and another from Jim Capaldi (a member of Steve Winwood's subsequent band, Traffic)—suggesting that the bass riff in *Gimme Some Lovin'* came from *Ain't That a Lot of Loving*. Again, plaintiffs contend that the documents are admissible as party-opponent statements. But because plaintiffs seek to use Davis's and Capaldi's statements for their truth, because Steve Winwood did not make those statements, and because one does not

manifest adoption of a statement or belief in it simply by hosting it on a website, the district court correctly excluded the documents as hearsay.

In short, plaintiffs presented no admissible evidence that created a genuine issue of material fact over whether Steve Winwood copied *Ain't That a Lot of Loving*.  Thus, he and Kobalt were entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

B.

We must also mention another issue—one plaintiffs raise for the first time on appeal. They contend that the district court erred in granting summary judgment because *Ain't That a Lot of Loving* and *Gimme Some Lovin'* are *strikingly* similar.

In general, we do not address unpreserved issues.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).  This practice "ensures fairness to litigants by preventing surprise issues from appearing on appeal."  *Id*.  Although we have sometimes made an exception in "exceptional cases" or when a "plain miscarriage of justice" might otherwise occur, such deviation is rare, *id*., and this is not one of those times.

To support their contention of a striking similarity between *Ain't That a Lot of Loving* and *Gimme Some Lovin'*, plaintiffs rely on an expert report by Dan Dixon in which he compares the songs.  But in opposition to Steve and Kobalt's motion for summary judgment, plaintiffs never cited the report.  And for good reason: it didn't exist yet.  Summary-judgment briefing was completed on March 17, 2017.  Yet Dixon's report is dated April 11, 2017, and plaintiffs did not submit it to the Court until April 28, 2017 (when they filed their opposition to Mervyn Winwood's motion to dismiss for lack of personal jurisdiction).  So more than a month passed between when the briefing was completed and when plaintiffs submitted the report.  In other words, on appeal Steve and Kobalt encounter not only a new issue but also new evidence.  This is exactly what our forfeiture rules protect against.

To be sure, the district court was deliberate in resolving the summary-judgment motion. And the delay did mean that, by the time the district court ruled, the expert report had been in the record for over six months.  But district courts are not advocates.  Nothing requires courts to

scour the record for evidence that retroactively supports arguments the parties previously made. And nothing requires them to create an argument out of whole cloth when a party has failed to raise it.

Thus, the district court did not err in granting summary judgment in favor of Steve and Kolbalt in light of an issue plaintiffs never presented and evidence they produced *after* briefing was completed. If plaintiffs needed more time to develop and present "facts essential to justify its opposition" to the summary-judgment motion, Federal Rule of Civil Procedure 56(d) provided them an avenue to relief. But they opted instead to complete their briefing and wait until their appeal to raise this issue.

We therefore conclude that the district court correctly granted judgment as a matter of law to Steve Winwood and Kobalt.

III.

Next, we turn to the district court's dismissal of Mervyn Winwood for lack of personal jurisdiction, which we review de novo. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). This inquiry requires us to determine whether Mervyn was eligible for service of process under Tennessee's long-arm statute and whether exercising jurisdiction over him would comport with due process. *See Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003). Due process requires that an out-of-state defendant have "minimum contacts" with the forum state sufficient to accord with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). And Tennessee law extends its jurisdiction to due process's limits, so due process is all we must address. *Bridgeport Music*, 327 F.3d at 477.

We can narrow our inquiry even further. Two types of personal jurisdiction exist: general and specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). All agree that general personal jurisdiction is not in play, so we can focus on specific personal jurisdiction.

Specific jurisdiction turns on the "affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks and brackets omitted). That means Mervyn's "suit-related conduct" must establish "a substantial connection" with Tennessee. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Put differently, he must have, among other things, "purposefully avail[ed] himself of the privilege of acting in [Tennessee]." *Miller*, 694 F.3d at 680 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Here, because the district court found personal jurisdiction lacking without holding an evidentiary hearing, plaintiff needed to make a prima-facie showing that jurisdiction exists. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Yet because Mervyn submitted affirmative evidence showing that the court lacked jurisdiction over him, mere allegations of jurisdiction are not enough. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Instead, plaintiffs were required to set forth, by affidavit or otherwise, specific facts showing jurisdiction. *Id*. This they have not done. Their primary contention on appeal is that Mervyn's alleged willful copyright infringement, which occurred in England, qualifies as purposeful activity in Tennessee because he intentionally harmed Tennessee residents. But *Walden v. Fiore* forecloses this argument. There, the Supreme Court held that a federal district court in Nevada lacked jurisdiction over a defendant from Georgia who, in Georgia, created a false affidavit knowing it would harm two plaintiffs in Nevada. *Walden*, 571 at 289–91. To find jurisdiction in such scenarios, the Court explained, would be to mistake a *plaintiff's* forum connections for a *defendant's* forum connections. *Id*. at 289.

Plaintiffs also claim that Mervyn's "efforts to market the infringing work throughout the United States" qualify as purposeful activity in Tennessee. Specifically, they assert, he "contracted for 'all promotions and marketing for the release of [ ]*Gimme Some Lovin'* including all sales and touring of The Spencer Davis Group' after re-recording the infringing work, originally written with an American perspective, specifically to market it in the United States." To support their characterization of what Mervyn did, plaintiffs point to three sources. Two are declarations from Mervyn himself. In the first, he states that *Gimme Some Lovin'* debuted in the United States in December of 1966. In the second, he states that the band contracted with Island

Records, which controlled the song's marketing and the band's sales and touring, and that he left the band in 1967. The final source plaintiffs rely on is the second document they claim is not hearsay: the scan of a page from Steve Winwood's website, which seems to reproduce an article by Timothy White, which itself appears to include a quote from Steve in which he says the Spencer Davis Group wrote *Gimme Some Lovin'* with an "American perspective."

These sources show that Mervyn was a member of the Spencer Davis Group; that the band contracted with a company that distributed and marketed its music; that the band wrote *Gimme Some Lovin'* with an "American perspective"; and that the song debuted in the United States while Mervyn was still in the band. What is missing, though, is any evidence that Mervyn himself directed distribution of the song within the United States or specifically within Tennessee. That shortcoming is dispositive.

Our decision in *Bridgeport Music* shows why. There, plaintiffs (which we referred to collectively as "Bridgeport") brought a copyright-infringement lawsuit in the Middle District of Tennessee against a Texas corporation (which we referred to as "NTW") and a Florida company (which we referred to as "DM"). *Bridgeport Music*, 327 F.3d at 475. The district court dismissed the case for lack of personal jurisdiction, and on appeal we affirmed the dismissal of NTW but reversed the dismissal of DM. *Id*. at 477, 485, 485. In doing so, we adopted what is known as the "stream of commerce 'plus'" theory of specific personal jurisdiction. *Id*. at 479–80. Under that theory, for a defendant to purposely avail himself of the privilege of acting within a forum state, he must do more than merely place a product into the stream of commerce. *Id*. at 479 (citing *Asahi Metal Indus. Co., v. Superior Court,* 480 U.S. 102 (1987) (O'Connor, J.) (plurality op.)).

When applying the "plus" approach in *Bridgeport Music*, we encountered identical arguments for each defendant. Bridgeport claimed that NTW and DM both had licensing agreements with third parties that distributed the allegedly infringing music nationwide (and thus in Tennessee). *Id*. at 480–81, 483–484. But we picked up on a subtle yet important distinction between the companies: Bridgeport had *not* shown that NTW did anything to direct its distributor's activities into Tennessee, but Bridgeport *had* shown that DM affirmatively "sought" distribution in all fifty States. *Id*. at 480–81, 483. Put differently, while NTW was "merely

aware" that its distributor was likely to spread its music throughout all fifty states, DM made a "deliberate decision" to pursue such dissemination. *Id.* at 480, 483.

Under *Bridgeport Music*, then, the district court lacked personal jurisdiction over Mervyn unless something he did specifically directed the distribution of *Gimme Some Lovin'* into Tennessee. So his membership in the Spencer Davis Group is not enough to confer personal jurisdiction. Neither is the band's distribution contract (unless plaintiffs can show that the band requested or required distribution of their music within all fifty States, which they have not even attempted to do). And neither is the song's eventual debut in the United States.

But what about plaintiffs' claim that Mervyn and the band re-recorded *Gimme Some Lovin'* specifically for distribution in the United States? Does that amount to an action by Mervyn to direct the song into Tennessee? On this factual issue, plaintiffs misrepresent the record. To support their claim, they cite a declaration from Steve Winwood. In it, he states: "Several weeks after the song's initial release in the UK and Europe, it was remixed, and piano, percussion and background vocals were added plus a new lead vocal by me with Jimmy Miller as producer for the subsequent U.S. release." So we know that the song was remixed, but we do *not* know that Mervyn played a role in the process.

Thus, plaintiffs have not set forth sufficient facts to show that Mervyn affirmatively sought distribution of *Gimme Some Lovin'* into Tennessee. Here, plaintiffs have not rebutted his affirmative evidence and have not shown the "plus" of their "stream of commerce" theory. Nothing in the record shows that Mervyn was more than merely aware that the song might one day cross the Atlantic. Thus, the district court correctly ruled that it lacked personal jurisdiction over him.

Plaintiffs also argue that the district court should have asserted jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) states that, in a lawsuit asserting federal claims, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

But as discussed, exercising jurisdiction over Mervyn would conflict with due process because he has not purposely availed himself of the privilege of acting in Tennessee. Thus, this argument also fails.

## IV.

For these reasons, we affirm the judgment in favor of Steve Winwood and Kobalt Music Publishing, and the dismissal of all claims against Mervyn Winwood.

———————————

## DISSENT

———————————

BERNICE BOUIE DONALD, Circuit Judge, dissenting.

Before this Court is a tune nearly as old as song—an allegation of copyright infringement. Such claims span across the decades of modern music, and notable ones include:

- Chuck Berry v. The Beach Boys (1963): Beach Boys composer Brian Wilson wrote the band's 1963 song "Surfin' U.S.A." with Chuck Berry's 1958 song "Sweet Little Sixteen" in mind. Although Wilson said he wrote the song as tribute to the black guitarist, Berry's lawyers sued for plagiarism, making this dispute one of the first of its kind in rock history. The Beach Boys' manager agreed to hand over publishing rights to the song, and Berry was credited as a songwriter beginning in 1966.[1]

- The Chiffons v. George Harrison (1976): Ronald Mack, writer for the female R&B group the Chiffons' 1962 hit "He's So Fine," sued Beatles member George Harrison for plagiarism over Harrison's 1970 song "My Sweet Lord." The suit went to trial, where the judge ruled that Harrison had "subconsciously" plagiarized the song. Harrison was eventually ordered to pay over $500,000 in damages, and later admitted that the songs were similar in his autobiography, *I Me Mine*.[2]

- Marvin Gaye v. Robin Thicke and Pharrell Williams (2015): In one of the most widely-publicized copyright infringement suits in recent memory, the family of Marvin Gaye claimed singer Robin Thicke's and producer Pharrell Williams' 2013 song "Blurred Lines" was a rip off of Gaye's 1977 song "Got to Give It Up." During litigation, Gaye's family cited to an interview in which Thicke said he told Williams they should write a song with the same "groove" as Gaye's classic. A jury found that Thicke and Williams infringed on the song's copyright, and the Ninth Circuit affirmed the $5.3 million judgment awarded to Gaye's family.[3]

---

[1]*See Jordan Runtagh*, *Songs on Trial: 12 Landmark Music Copyright Cases*, ROLLING STONE MAGAZINE (June 8, 2016), https://www.rollingstone.com/politics/politics-lists/songs-on-trial-12-landmark-music-copyright-cases-166396/the-beach-boys-vs-chuck-berry-1963-65098/.

[2]*See Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F. Supp. 177 (S.D.N.Y. 1976); Runtagh, *supra* note 1.

[3]*See Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018); Kory Grow, *Robin Thicke, Pharrell Lose Multi-Million Dollar 'Blurred Lines' Lawsuit*, ROLLING STONE MAGAZINE (Mar. 10, 2015), https://www.rollingstone.com/music/music-news/robin-thicke-pharrell-lose-multi-million-dollar-blurred-lines-lawsuit-35975/.

This small sampling of cases illustrates how artists must sometimes fight to protect their creative work, and how the courts must sometimes intervene to uphold the integrity of the creative process.

Out of the transatlantic music exchange in the mid 1960s, which brought British Rock to the United States and American Rhythm & Blues to Britain, came two songs: "Ain't That a Lot of Love," by Black Americans Willia Dean Parker and Homer Banks, and "Gimme Some Lovin,'" by British band The Spencer Davis Group. Many British bands—including the Beatles[4] and the Rolling Stones[5]— have been inspired by the works of black R&B artists. However, there is a fine line between inspiration and infringement, and evidence in the record below supports a finding that the Defendants crossed this line. Nevertheless, the majority chooses to disregard this evidence, and fails to recognize that Mervyn Winwood took steps to distribute "Gimme Some Lovin'" in the United States. Because I respectfully disagree with the majority's opinion concerning both issues on appeal, I dissent, and would reverse the findings of the district court.

I.

The majority concludes that the district court did not err when it ruled that four documents Plaintiffs sought to admit as proof of copying were inadmissible hearsay. Even if this were true, the majority neglects other evidence in the record—Dan Dixon's expert report, submitted by Plaintiffs—that points to a genuine issue of material fact. Accordingly, the district court's grant of summary judgment should be reversed.

Defendants' assertion that Plaintiffs have not submitted evidence of striking similarity must be dismissed in the interests of justice. Defendants argue that the expert report should not

---

[4]*See* Bill Crandall, *Motown Really Had A Hold On The Beatles*, CBS NEW YORK (Jan. 24, 2014), https://newyork.cbslocal.com/2014/01/24/motown-really-had-a-hold-on-the-beatles/ (describing how the Beatles were inspired by black musicians upon their "U.S. invasion," as evidenced by their second album's feature of "one Chuck Berry cover . . . and a whole lot of Motown").

[5]*See* Adam Theisen, *The Rolling Stones and Motown: A musical fascination*, DETROIT METRO TIMES (July 1, 2015), https://www metrotimes.com/detroit/the-rolling-stones-and-motown/Content?oid=2353522 (detailing how black musicians influenced the Rolling Stones, and how Motown music "proved to be a cover song bank from which the group could continuously withdraw").

be considered because it was not submitted in response to their motion for summary judgment—but instead was submitted in response to Mervyn's motion to dismiss. Generally, we do not review arguments made for the first time on appeal, and as we have explained, "[o]ur function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006) (internal citations omitted). However, we "will consider an issue not raised below [ ] when the proper resolution is beyond doubt or a plain miscarriage of justice might otherwise result." *Id.* These exceptional circumstances are rare, but they do occur. Because the expert report points to a genuine issue of material fact, this is one of those circumstances.

This Court adheres to the principle that "granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly in copyright cases." *Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984) (quoting *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946)). "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). For copying to be actionable, a plaintiff must prove that the copied elements are original, meaning that the elements were "independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). In the usual infringement case, the copy element proves problematic, as there is often no objective evidence that shows the process by which the defendant copied the work. *See Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004). Recognizing this, where there is no direct evidence of copying, courts allow a plaintiff to establish an inference of copying in one of two ways: (1) by establishing defendants had access to the allegedly-infringed work and that the two works are substantially similar, *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999); or, (2) when access cannot be proven, by establishing that the two works are "strikingly similar," *Murray Hill*, 361 F.3d at 317. A finding of "striking similarity" requires the similarities at issue be "so striking as to preclude the possibility that the defendant independently arrived at the same result. In other words, as a matter of logic, the only explanation for the similarities between the two works must be 'copying rather

than . . . coincidence, independent creation, or prior common source.'"  4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.02[B].  For a plaintiff to show that two musical works are strikingly similar, however, expert testimony is often required due to the technical nature of musical compositions.  *See id.*

Defendants are not entitled to summary judgment because Dixon's expert report clearly establishes a triable issue of fact as to whether Defendants copied Plaintiffs' song.  While Dixon's report was not submitted until after the summary judgment briefing schedule, it is part of the district court record, and we may affirm or deny based on any reason in the record.  *EA Mgmt. v. JP Morgan Chase Bank, N.A.*, 655 F.3d 573, 575 (6th Cir. 2014); *see also Auto Club Property-Casualty Ins. Co. v. B.T.*, 596 Fed. App'x 409, 415 (6th Cir. 2015) (reversing the district court's grant of summary judgment on a basis not addressed in the parties' briefs yet supported by the record).  The majority contends that the district court is not required to search the record for evidence that supports the parties' arguments.  Regardless, this Court can review the entire record, and should when as here, the record supports reversing the district court.

The expert report concludes that "the two works [ ] exhibit a clear and unmistakable overall similarity of sound . . . primarily due to the fact that the two works prominently feature identical bass lines, nearly identical piano patterns, and similar harmonic, melodic, and lyrical materials."  Notably, the identical base lines and nearly identical piano patterns "constitute clear and obvious similarly between the two works," and are referenced more than once in the report.  According to the report, "this combination of identical and similar compositional features . . . is extremely unlikely to have been the result of independent creation."  The report further concludes that the two songs "exhibit strikingly similar compositional features, that there is clear objective musicological evidence that strongly suggests copying of protectable musical expression . . ., and that the amount of musical expression at issue is substantial and constitutes the 'heart' of both works."

These conclusions indicate that the two songs are strikingly similar.  Notwithstanding the expert report, anyone with a listening ear, including a jury, could reasonably conclude that the two songs contain a strikingly similar musical composition.  Thus, there is an issue of material fact as to whether Defendants copied Plaintiffs' song, and Defendants are therefore not entitled

to summary judgment.  *See Murray Hill*, 361 F.3d at 317.  The majority chooses to overlook this evidence simply because Plaintiffs presented it after briefing was complete, despite our ability on appeal to consider the entire record.  This Court should not be in the business of punishing litigants for their attorney's misdeeds or failure to take the preferred course of action.  *See In re Salem Mortg. Co.*, 791 F.2d 456, 459–60 (6th Cir. 1986) ("[A] technical error or a slight mistake by the plaintiff's attorney should not deprive plaintiff of an opportunity to present the true merits of his claims.") (internal citation omitted).  Regrettably, the majority has denied Plaintiffs their deserved opportunity to present their case to a jury, which is a grave injustice.

## II.

In affirming the district court's grant of Mervyn Winwood's motion to dismiss for lack of personal jurisdiction, the majority fails to view the evidence in the light most favorable to Plaintiffs, as required by the Federal Rules of Civil Procedure and by clear precedent.

For a court to exercise jurisdiction over a non-resident, the due process clause requires the non-resident to have at least "'certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

This Court has indicated a clear preference for Justice O'Connor's stream of commerce "plus" approach to assessing "purposeful availment," as articulated in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 (1987) (O'Connor, J.) (plurality op.).  *See Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 480 (6th Cir. 2003).  Under the commerce "plus" approach, personal jurisdiction over a defendant exists based on a product's availability in the forum state when the defendant placed the product into the stream of commerce and there is evidence of some "[a]dditional conduct . . . [that] may indicate an intent or purpose to serve the market in the forum State." *Asahi Metal Indus. Co.*, 480 U.S. at 112; *see also Bridgeport Music, Inc.*, 327 F.3d at 480.  Thus, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in "some overt actions connecting the defendant with the forum state." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998).  "If a plaintiff can

demonstrate purposeful availment, personal jurisdiction over a non-resident will not be defeated simply by the absence of physical contacts with the forum state." *Bridgeport Music, Inc.*, 327 F.3d at 479 (citing *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 476 (1985)).

The plaintiff bears the burden of demonstrating by a preponderance of the evidence that personal jurisdiction exists over the non-resident defendant. *Youn*, 324 F.3d at 417. The strength and nature of the plaintiff's burden depends on the nature of the motion and how the court approaches the issue. When the court does not hold an evidentiary hearing to determine jurisdiction, as is the case here, the plaintiff need only make a prima facie case that the court has personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). A plaintiff's burden is met by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Id.* (citation and internal quotation marks omitted). When no evidentiary hearing is held, "the court must consider the pleadings and affidavits in the light most favorable to the plaintiff." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Further, the court may not "weigh the controverting assertions of the party seeking dismissal" against the plaintiff's pleadings and affidavits. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir.1991).

The majority concludes that Plaintiffs could not properly assert personal jurisdiction over Mervyn because Plaintiffs did not set forth evidence or affidavits establishing jurisdiction. This conclusion, however, is incorrect, as Plaintiffs have submitted evidence supporting the district court's ability to exercise personal jurisdiction over Mervyn.

In support of his motion to dismiss, Mervyn submitted a declaration that he did not purposefully avail himself of the privilege of acting or causing consequences in Tennessee. He also stated that the record label Island Records directed promotions and marketing, and that he had quit playing in The Spencer Davis Group before they began touring in the United States. Such an affidavit is sufficient to support a motion to dismiss for lack of personal jurisdiction. Because Mervyn motion to dismiss was sufficiently supported, the burden shifted to Plaintiffs to establish that the district court had personal jurisdiction over Mervyn. To establish a *prima facie* case, Plaintiffs must show that Mervyn: (1) purposefully availed himself of the forum through his activities that (2) gave rise to the cause of action, and (3) that such actions or consequences

caused by those activities were substantially related to the forum state. *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Contrary to the majority's finding, Plaintiffs have established a *prima facie* case of personal jurisdiction.

This Court has found that purposeful availment can be based on the existence of a nationwide distribution agreement—but only where a defendant took steps to *require* the product be marketed throughout the United States. *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 252 (6th Cir. 2009); *Bridgeport Music, Inc.*, 327 F.3d at 480, 484 n.11; *Tobin*, 993 F.2d at 543 (finding purposeful availment where the distribution agreement required the distribution of the defendant's product throughout the United States, its territories and possessions, and Puerto Rico). Mere awareness that a product is likely to be marketed, without more, does not suffice.

While our decision in *Bridgeport Music* shows the two sides of personal jurisdiction based on a nationwide distribution agreement, as the majority has detailed, a second case from this Court helps to draw the line that divides the two defendants in *Bridgeport Music*. In *Palnik v. Westlake Entertainment, Inc.*, we affirmed the district court's decision to dismiss the plaintiff's copyright infringement suit—without conducting jurisdictional discovery—for lack of personal jurisdiction. 344 F. App'x 249, 253–54 (6th Cir. 2009). In support of their opposition, plaintiffs alleged that the defendants participated in making and profited from the movie at issue, and that the movie ended up in Ohio by the actions of third-party distributors. *Id.* at 252. Reviewing these allegations, we explained:

> Drawing inferences for [plaintiff], as we must, these allegations permit two potential conclusions as to the distribution of Steal Me to Ohio. First, our defendants, after making the movie, caused it to be distributed to Ohio through a national or regional distribution contract. Second, our defendants, for whatever reason—because they do not own the distribution rights, because they deferred entirely to a third-party distributor, or for another reason that gave them no control over the movie's distribution—were not responsible for the movie appearing in Ohio.
>
> Because one conclusion supports jurisdiction and the other does not, [plaintiff]'s complaint remains unclear as to jurisdiction and therefore fails absent reasonably particular facts that resolve which is the better understanding of the defendants' actions toward the forum state. *Cf. Twombly*, 550 U.S. at 567 (1955). [Plaintiff]'s allegations provide no such resolution: a court cannot infer that an agreement of the sort necessary for jurisdiction under *Bridgeport* and the Ohio

cases—one that required (as opposed to permitted or was silent as to) sale or rental in Ohio—existed.

*Id.* In concluding that plaintiff had failed to establish a prima facie case for personal jurisdiction, we acknowledged that in situations where personal jurisdiction turns on a national distribution agreement, without jurisdictional discovery plaintiffs are unable to produce the actual agreement that would establish jurisdiction. In doing so, we explained:

> Both the Federal Rules of Civil Procedure and our case law governing personal jurisdiction are more forgiving to a litigant with an information deficit than this argument acknowledges. A party and her attorney can, on "knowledge, information, and belief," assert specifically that the existence of the necessary distribution relationship will "likely have evidentiary support after a reasonable opportunity" for discovery. *See* Fed. R. Civ. P. 11(b). And such an assertion will be assumed true for the purposes of the party's prima facie case for jurisdiction "notwithstanding . . . contrary assertions" from the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). *To prevail, at least at this early stage, [the plaintiff] merely [needs] to assert the likelihood that, should he be permitted to look for it, the required relationship would be found to exist.*

*Id.* at 252–53 (emphasis added).

Applying *Bridgeport Music* and *Palnik* to the present case, Plaintiffs have met their burden of establishing purposeful availment. The relevant evidence Plaintiffs rely on in opposition to Mervyn's motion to dismiss is: (1) an affidavit from Steve Winwood in which he states that The Spencer Davis Group re-recorded "Gimme Some Lovin'" for the purpose of distribution in the United States; (2) an affidavit from Mervyn where he states that The Spencer Davis Group contracted with Island Records for all promotions and marketing, including all sales and touring of The Spencer Davis Group, of "Gimme Some Lovin'"; and (3) the undisputed fact that the song was distributed in the United States. Mervyn, in his own affidavit, stated that The Spencer Davis Group contracted with Island Records for all promotions and marketing, including all sales and touring of The Spencer Davis Group of "Gimme Some Lovin.'" While Mervyn does not explicitly admit that the contract with Island Records required distribution throughout the United States, in viewing the evidence in the light most favorable to the plaintiff—which the majority fails to do— this assertion, along with Steve's statement that the contract was entered into for the purposes of distribution in the United States, supports a finding

that they took steps to require the distribution of "Gimme Some Lovin'" throughout the United States.  At this stage, that is all that is necessary.

Because the district court did not proceed beyond the purposeful availment requirement, the remaining two prongs of the *Mohasco* test are more appropriately determined by the district court on remand.  *See Bridgeport Music*, *Inc.*, 327 F.3d at 485.

III.

For the foregoing reasons, I respectfully dissent.