NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0049n.06
No. 22-5348

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 24, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| WILLIA DEAN PARKER; ROSE BANKS, individually and as successor-in-interest to Homer Banks, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> SARAH HINTON, in her capacity as executor of the Estate of Spencer Davis, <br><br> Defendant-Appellee. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

OPINION

Before: SUHRHEINRICH, CLAY, and DAVIS, Circuit Judges.

SUHRHEINRICH, Circuit Judge. In this copyright action, Plaintiffs allege that the Spencer Davis Group, in their song *Gimme Some Lovin'*, copied a riff—a distinct pattern of musical notes—from Plaintiffs' song *Ain't That a Lot of Love*. The district court held that Plaintiffs failed to establish the prerequisites to suit—copyright registration and deposit—and dismissed their claim on summary judgment. We affirm.

**I.**

Willia Dean Parker and Homer Banks co-wrote *Ain't That a Lot of Love* in 1965. Banks recorded and released the song with two record labels in 1965 and 1966. Several artists have released *Ain't That a Lot of Love* over the years, including Banks on his 2005 self-titled album.

In 1966, Parker and Banks assigned the song's publication rights to East Publications, Inc. in exchange for certain distribution and performance royalties. East Publications registered the

song on Parker and Banks's behalf as an unpublished work with the Copyright Office in April 1966.

Also in 1966, when *Ain't That a Lot of Love* hit the airwaves, the Spencer Davis Group released a remixed version of *Gimme Some Lovin'*. *Gimme Some Lovin'* was a hit. The song eventually topped out at number seven in the United States and number two in the United Kingdom. The Spencer Davis Group's record label registered *Gimme Some Lovin'* as a published work with the Copyright Office in March 1967.

In 1968, Banks assigned his rights to the song to East/Memphis Music Corp. ("East Memphis Music"), the successor to East Publications. Banks stated in a separate 1968 agreement that he wrote *Ain't That a Lot of Love* in the course of his employment with East Memphis Music. That same year, East Memphis Music released a copy of *Ain't That a Lot of Love*'s sheet music to the public with a notice of copyright.

Rights to *Ain't That a Lot of Love* have changed hands over the years and are now held by Universal Songs of Polygram International, Inc. ("Universal"). Plaintiffs did not join Universal to this case.

Parker and the late Banks's wife, Rose, brought this suit in 2017 against the late Spencer Davis (now represented by his estate's representative Sarah Hinton).[1] The district court granted summary judgment to Hinton. Plaintiffs timely appealed.

**A.**

This court reviews a grant of summary judgment de novo. *See RJ Control Consultants, Inc. v. Multijet, LLC*, 981 F.3d 446, 452 (6th Cir. 2020). The moving party is entitled to summary

---

[1] In 2016, Plaintiffs previously sued the Spencer Davis Group's members (Spencer Davis and Mervyn and Steve Winwood), and two record labels that held an interest in *Gimme Some Lovin'*. *Parker v. Winwood* ("*Parker I*"), 938 F.3d 833 (6th Cir. 2019). They lost for failing to provide admissible evidence of infringement. *Id.* at 835. Plaintiffs never served Spencer Davis and voluntarily dismissed him from *Parker I*.

judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court must "view factual evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009).

"[A] party seeking summary judgment always bears the initial responsibility" to show there is no dispute regarding any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448–49 (6th Cir. 2012). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case," an element on which she will bear the burden at trial, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

**B.**

The Copyright Act of 1909 ("1909 Act") permitted the copyright of musical compositions, Copyright Act of 1909 (codified as amended), ch. 320, § 5(e), 35 Stat. 1075, 1076 (repealed 1976),[2] but only musical compositions transcribed in sheet music or other manuscript form, *see Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1061 (9th Cir. 2020) (en banc).[3] To register a copyright, an author had to submit to the Copyright Office a registration application, a fee, and the appropriate number of deposit copies of his or her work. Copyright Act of 1909, §§ 11, 209. Registration of an

---

[2] Congress codified the 1909 Act in 1947. Act of July 30, 1947, ch. 391, 61 Stat. 652. All citations to the 1909 Act in our opinion refer to the Act's codified version.

[3] Unregistered and unpublished works still retained common law protection under the 1909 Act. 2 Nimmer on Copyright §§ 7.16[A][2][a], 9.09[A]; *see also* Copyright Act of 1909, § 2 ("Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work.").

unpublished work required one "complete" deposit copy. *Id.* § 12. Registration of a published work required two "complete" deposit copies. *Id.* § 13. A plaintiff could not bring an infringement claim under the 1909 Act for either published or unpublished works unless the copyright was registered. *Id.*

Congress extended copyright protection to sound recordings in the Copyright Act of 1976 ("1976 Act"). Copyright Act of 1976, 17 U.S.C. § 102(a)(2), (a)(7). The basic registration requirements remain the same under both Acts. Copyright Act of 1909, § 11; Copyright Act of 1976, 17 U.S.C. § 408(a), (b). Registration is still a prerequisite to suit. Copyright Act of 1976, 17 U.S.C. § 411(a).

## C.

Initially, we consider Hinton's challenge to the district court's standing ruling. The district court, applying the 1976 Act, held that Plaintiffs had standing to sue as beneficial owners (authors who parted with the legal title to their copyright in exchange for royalties) of their copyright without joining Universal (*Ain't That a Lot of Love*'s legal owner). Hinton argues that the 1909 Act's standing rules, which required a beneficial owner to join the legal owner to maintain a copyright infringement suit, apply here. In addition, Hinton argues that Rose Banks lacks standing because Homer Banks's 1968 agreement with East Memphis Music was a work-for-hire contract that vested the copyright interest in the publisher, not Banks.

Use of the word standing in this context is a misnomer. The proper question is whether Plaintiffs "ha[ve] a cause of action under the [copyright] statute," *see Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016)), not whether they satisfy the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Smith v. Casey*, 741 F.3d 1236, 1240–41 (11th Cir. 2014) (treating whether a copyright-

infringement plaintiff has a right to sue as a statutory, not constitutional, standing inquiry); *cf. Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2012) (holding that the 1976 Act's pre-suit registration requirement "does not restrict a federal court's subject-matter jurisdiction").

The district court correctly concluded that the 1976 Act applied because this suit was filed in 2019. Because Hinton's claim involves two versions of the Copyright Act, the Court will briefly address how each are interpreted. "Under the 1909 Copyright Act, which was the predecessor of the Copyright Act of 1976, a copyright 'proprietor' was the *only* individual who had standing to sue for an infringement." *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 886 (9th Cir. 2005) (first citing 17 U.S.C. § 101(b) (1952); and then citing *Gardner v. Nike, Inc.*, 279 F.3d 774, 777–78 (9th Cir. 2002)). When determining the "owner" of a copyright under the 1909 Copyright Act, courts found that a proprietor's rights were indivisible, and thus, "could not be assigned piecemeal." *Id*. Thereafter, the 1976 Copyright Act was enacted and provided that "[t]he *legal or beneficial* owner of an exclusive right under a copyright is entitled" to sue for infringement. 17 U.S.C. § 501(b) (emphasis added); *see also Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984). In contradiction to the 1909 Act, the 1976 Act "allowed for divisibility of ownership interests under a copyright." *Silvers*, 402 F.3d at 886 (emphasis omitted). Resolving this contradiction, Nimmer explains: "With respect to causes of action arising on or after January 1, 1978, any rights or remedies under the 1909 Copyright Act are superseded by the rights and remedies under the current Copyright Act. . . . [C]ases no longer arise based on alleged infringement that took place in 1977 or earlier." 1 Nimmer on Copyright § 1.20; *id.* § 12.02[D] n.78 ("To the extent that a beneficial owner's standing to sue differs between the 1909 Act and the current Act, the latter applies to causes of action arising after January 1, 1978, even if the instrument creating such beneficial interest was executed pre-1978."); *see also* Trans. & Supp. Provisions of the Copyright

Act of 1976, Pub. L. 94-553, § 112 (1976) (providing that "[a]ll causes of action that arose under title 17 before January 1, 1978, shall be governed by title 17 as it existed when the cause of action arose"). The 1976 Act imposes a three-year statute of limitations. 17 U.S.C. § 507(b). Because "Plaintiffs seek recovery for damages incurred in the three years preceding [their filing of the *Parker I* complaint] and future earnings, going forward," the cause of action arose after January 1978, and the district court properly applied the 1976 Act's standing rules.

The district court was also right that, under the 1976 Act, Plaintiffs can sue on their own accord if they are beneficial owners of the copyright. *See* 17 U.S.C. § 501(b) (stating that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it"). The district court correctly found that although Plaintiffs assigned all rights in the song to a third party, "they retained the right to royalties based on sales or license fees" because the assignment was "[i]n consideration" for various royalties. Plaintiffs' right to receive royalties makes them beneficial owners of the copyright and gives them standing to sue. *See Smith*, 741 F.3d at 1241 (defining a beneficial owner as "an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees" (quoting H.R. Rep. No. 94–1476, at 159 (1976))). Accordingly, the reservation of the right to receive royalties, when a composer assigns his copyright title, adequately preserves the composer's ownership of his work and ability to sue for infringement under the 1976 Act.

Hinton correctly observes that Banks's 1968 agreement states that he wrote *Ain't That a Lot of Love* while working for East Memphis Music. Work-for-hire arrangements vest the employer with the rights to the work created by the employee under the contract. *See Hi-Tech Video Prods. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995). The employee

6

retains no interest, beneficial or otherwise, in the work they created in a work-for-hire scenario because the employer is the work's author. 1 Nimmer on Copyright § 5.03[A]. But Hinton's work-for-hire argument nonetheless fails because of a clause she neglects to mention. It reads, "Banks is the *author thereof and entitled to the copyright therein* (including, without limitation, all renewal copyrights) forever." That is a clear sign Banks retained his interest in the copyright. Rose Banks thus has standing to sue.

**D.**

The district court held that Plaintiffs could not maintain a claim because they did not file a deposit copy as required by the 1909 Act for registration of unpublished works. On appeal, Plaintiffs claim that the district court erred because, under the 1976 Act, the registration certificate, which indicates that "One copy received Apr[.] 28, 1966," is prima facie proof of registration and deposit of their unpublished work. But, as Hinton points out, Plaintiffs made a different argument in the district court—they argued that they were never required to deposit copies of their work and, in the process, conceded that "no such [deposit copies] exist[ed]." Hinton argues that the district court correctly found this admission dispositive of their claim. In other words, Hinton argues that Plaintiffs have waived the right to argue on appeal that the registration certificate is proof they filed a deposit copy.

"[I]ssues 'raised for the first time on appeal are not properly before this [c]ourt,'" *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 272 n.2 (6th Cir. 2018) (quoting *Kusens v. Pascal Co.*, 448 F.3d 349, 368 (6th Cir. 2006)), and will not be considered unless the case is exceptional or a "miscarriage of justice" would otherwise result. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (quoting *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)). A party waives an argument by explicitly stating that a proposition is not disputed or intentionally not pressing an argument, *see United States v. White*, 920 F.3d 1109, 1122 n.4 (6th Cir. 2019 (Clay, J., concurring

7

and dissenting in part); whereas, an argument is forfeited when a party fails to raise it before the district court, *see Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006).

Plaintiffs likely did not press the argument that their registration certificate is prima facie evidence of deposit in the district court because it was inconsistent with their assertion that no deposit copy existed. Whether characterized as waiver or forfeiture, Plaintiffs did not make the argument that they now advance on appeal before the district court. They explicitly conceded that East Publications did not deposit a copy of *Ain't That a Lot of Love* upon registration and claimed that it did not need to. The district court relied on Plaintiffs' admission to conclude that they failed to properly register their copyright prior to suing and thus could not maintain their claim. Because appellate courts review arguments actually made below, not those the losing party wishes they raised after the district court's unfavorable order, *see Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 360 n.5 (6th Cir. 2013), we decline to review Plaintiffs' newly-minted registration argument.

Thus, the district court correctly concluded that Plaintiffs' admitted failure to properly register their copyright deprives them of the right to sue.

**E.**

The grant of summary judgment was proper for another reason—Plaintiffs never produced a deposit copy of their sheet music (assuming such a copy exists) and therefore failed to meet their burden on summary judgment. The district court did not address this argument (and did not need to), but we do because it underscores the purpose of the deposit copy requirement.

"[T]he scope of the copyright is limited by the deposit copy." *Skidmore*, 952 F.3d at 1063. Therefore, protected elements of a plaintiff's copyright must appear in the work's deposit copy. *See Merrell v. Tice*, 104 U.S. 557, 561 (1881) (explaining that deposit copies are necessary "to enable other authors to inspect them in order to ascertain precisely what was the subject of

copyright"). For this reason, both the 1909 and 1976 Acts require authors to deposit "complete" copies of the work to provide the "Copyright Office with sufficient material to identify the work in which the registrant claims a copyright . . . [and] prevent confusion about which work the author is attempting to register." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161–62 (1st Cir. 1994) (citations omitted), *abrogated on other grounds by Reed Elsevier*, 559 U.S. 154; *see* Copyright Act of 1976, 17 U.S.C. § 407(a); Copyright Act of 1909, §§ 12 and 13. As the Copyright Office has informed authors since 1967, the deposit copy represents the author's entire claim to a copyright. *See* Compendium of Copyright Office Practices ("Copyright Office Compendium") § 2.6.1.II.a (1st ed. 1967) (explaining the Copyright Office's policy of writing to authors of unpublished musical works that "protection extends only to the material actually deposited"). Put another way, a copyright protects original material to the extent it is contained in the deposit copy. Copyright Office Compendium § 504 (3d ed. 2017) ("As a general rule, a registration for a work of authorship covers the entire copyrightable content of the authorship that (i) is claimed in the application, (ii) is owned by the claimant, and (iii) *is contained in the deposit copy(ies)*." (emphasis added)).

Thus, a plaintiff must use the deposit copy to establish the ownership component of a copyright infringement claim. *See Coles v. Wonder*, 283 F.3d 798, 801 (6th Cir. 2002) ("[A] plaintiff must prove two things in order to establish a copyright infringement claim: first, that he had ownership of a valid copyright; second, that another person copied a protected interest in the work."). Because Plaintiffs never produced a deposit copy of *Ain't That a Lot of Love*, they cannot establish the first element of their claim against the Spencer Davis Group. Therefore, they have failed to demonstrate a genuine dispute of material fact regarding their copyright infringement claim. *See* Fed. R. Civ. P. 56(a), (c); *see Celotex*, 477 U.S. at 324 (explaining that "the nonmoving

9

party [must] go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial'" (quoting Fed. R. Civ. P. 56(e)).

Plaintiffs assert that they do not need a deposit copy because they have an expert report from a musicologist who identified "a clear and unmistakable overall similarity of sound" between the two songs. But here's the rub. The musicologist did not draw that conclusion from the protected work, *i.e.*, the deposit copy of *Ain't That a Lot of Love*. Instead, he listened to internet-based sound recordings of the two songs and prepared his own sheet music transcription. But the sound recording is not synonymous with the sheet music deposit copy. *See Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 272 n.1 (6th Cir. 2009) ("Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights." (citing 17 U.S.C. § 102(a)(2), (7)); *see also Skidmore*, 952 F.3d at 1061 (explaining that, under the 1909 Act, "copyrighted works could [not] be anything other than sheet music or, for an unpublished work, the musical composition transcribed in the deposit copy"). Because Plaintiffs' expert report does not compare *Ain't That a Lot of Love*'s deposit copy with *Gimme Some Lovin'*, the report cannot establish a disputed fact as to their copyright infringement claim. *Cf. Skidmore*, 952 F.3d at 1063–64 (affirming the district court's ruling prohibiting the plaintiff from playing at trial sound recordings of his song that contained embellishments not present in the sheet music deposit copy).

## II.

At bottom, Plaintiffs' admitted failure to deposit and produce a copy of *Ain't That a Lot of Love*'s sheet music prevents them from maintaining this lawsuit. **AFFIRMED.**