RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

RJ CONTROL CONSULTANTS, INC.; PAUL E. ROGERS,

      *Plaintiffs-Appellants*,

    *v.*

MULTIJECT, LLC; RSW TECHNOLOGIES, LLC; JACK ELDER,

      *Defendants-Appellees*.

> No. 23-1591

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:16-cv-10728—David M. Lawson, District Judge.

Decided and Filed: April 3, 2024

Before: SILER, COLE, and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Eric Scheible, Jonathan D. Sweik, FRASCO CAPONIGRO WINEMAN SCHEIBLE HAUSER & LUTTMAN, Troy, Michigan, for Appellants. David C. Purdue, PURDUE LAW OFFICES, LLC, Toledo, Ohio, for Appellee RSW Technologies, LLC. Richard L. McDonnell, INTREPID LAW GROUP PLC, Rochester, Michigan, for Appellees Multiject, LLC and Jack Elder.

─────────────────

## OPINION

─────────────────

MATHIS, Circuit Judge. This case involves the alleged infringement of a copyright on software code used in an industrial control system. This is the third time this case has come before us. RJ Control Consultants, Inc. and its sole shareholder, Paul Rogers (collectively, "Plaintiffs"), appeal the district court's exclusion of their proposed expert and the grant of

summary judgment to Multiject, LLC; its sole owner, Jack Elder; and RSW Technologies, LLC (collectively, "Defendants").   In the first appeal, we reversed the district court's grant of summary judgment to Defendants on Plaintiffs' copyright-infringement claim related to the software code and remanded the case to the district court "for the taking of additional evidence." *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 458–59 (6th Cir. 2020) (*RJ Control I*).   We dismissed the second appeal for lack of appellate jurisdiction.  *RJ Control Consultants, Inc. v. Multiject, LLC*, No. 22-1102, 2023 WL 2785764 (6th Cir. Apr. 5, 2023) (*RJ Control II*).   Because the district court did not abuse its discretion in excluding Plaintiffs' proposed expert and because the district court did not err in granting summary judgment to Defendants, we affirm.

**I.**

We previously summarized the facts underlying this matter as follows:

This is a copyright dispute over the use of software code and technical drawings for an industrial control system related to plastic injection molding. . . .

The district court characterized this as a "business dispute which soured a friendship." That friendship was between . . . Rogers and . . . Elder.  Rogers was the principal and sole shareholder of [RJ Control], a Michigan company that creates industrial control systems.  Elder is the sole owner of [Multiject], a Michigan business which engineers and sells various industrial accessories related to plastic injection molding.  Their friendship turned into a business relationship when Elder approached Rogers seeking Rogers's expertise and assistance in developing a control system for an injection molding machine.

In 2008, Rogers and Elder entered into an oral agreement whereby Rogers would develop a rotary turntable control system for Elder and Multiject.  This turntable control system is the "brain" of the turntable, allowing the turntable to move and operate.  RJ Control, through Rogers's work, updated the control system design in 2013, labeling the newest iteration as "Design 3."   The parties dispute the invoicing for Design 3.

In March of 2014, Elder asked Rogers for copies of Design 3's diagrams as well as the software source code "in case something happened" to Rogers.  Rogers disclosed that information to Multiject, believing that Multiject and Elder would not improperly use or disclose the information to third parties.  Three days after providing that information to Multiject, Elder informed Rogers and RJ Control that Elder and Multiject would no longer need Rogers's services and would instead use [RSW] for the assembly and wiring of the control systems.  Elder said that Multiject would like to continue working with Rogers as a technical

consultant for the system design and that Multiject appreciated his expertise but that "this comes down to a business decision."

Multiject and RSW—RJ Control's replacement—had a long-standing business relationship with each other, and Multiject was already considering switching to RSW when it asked Rogers for the design diagrams. Elder claims that Multiject was increasingly concerned with Rogers's pricing, worrying that Rogers was charging Multiject too much relative to competitors, at least to the extent Rogers was performing manual labor rather than designing the systems. For that reason, Elder and Multiject decided to "switch out" RJ Control and Rogers for RSW, for purposes of manufacturing rotary tables.

On the same day that Elder informed Rogers that Multiject would be using RSW to assemble and wire the control systems, RSW sent Elder a quote that explicitly referenced the assembly and wiring of "RJ Table Control." Elder, Multiject, and RSW used Design 3—both the software code and the technical drawings—in the assembly and wiring of new control systems. RSW did not make any changes in the design when it used Design 3. RSW claims that it did not know Rogers and RJ Control had separately designed Design 3 and did not know there was dispute as to whether Elder properly paid Rogers for that work; that is to say, RSW believed Multiject had permission to build the control systems using the software and technical drawings.

On February 17, 2016—nearly two years after Rogers initially supplied the software code and technical drawings to Elder—Rogers obtained two Copyright Certificates of Registration: one for the "Control System Turn Table Software: Design 3" (i.e., the software code) and another for "Control System Turn Table Schematics: Design 3" (i.e., the technical drawings).

Nearly two weeks after receiving those copyrights, RJ Control brought suit against Multiject, Elder, and RSW. Over a year later, RJ Control filed an amended complaint, adding Rogers as a plaintiff. That amended complaint brought several federal and state law claims: (1) copyright infringement, (2) trademark infringement, (3) violation of the Michigan Consumer Protection Act, (4) breach of contract, (5) unjust enrichment, (6) conversion, and (7) tortious interference with contract/business expectancy.

*RJ Control I*, 981 F.3d at 450–52 (footnotes omitted).

The district court granted summary judgment to Defendants on Plaintiffs' copyright-infringement and trademark-infringement claims and declined to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. *Id.* at 452. Plaintiffs appealed the dismissal of its copyright-infringement claim. *Id.* We affirmed the district court's decision related to technical drawings, but we reversed the grant of summary judgment on the software copyright claim and remanded the case to the district court. *Id.* at 456–59.

On remand, the district court entered a supplemental scheduling order establishing deadlines for expert disclosures and for filing dispositive motions and motions challenging experts. The district court did not set a trial date.

Plaintiffs timely served their expert disclosures, identifying David Lockhart of Sycamore Technical Services, LLC and Sycamore Automation and Controls as their expert. Defendants also timely served their expert disclosures. None of the parties produced expert reports with their disclosures.

In April 2021, the magistrate judge ordered Multiject to "produce the code that was used in each control produced by RSW." R. 87, PageID 2738. Later that same month, the district court extended the discovery and motions deadlines. It did not, however, extend the expert-disclosure deadline and stated that "[a]ll other provisions of the supplemental scheduling order remain in full force and effect." R. 89.

Multiject and Elder moved to exclude Plaintiffs' expert on the grounds that Plaintiffs failed to properly disclose Lockhart because they did not produce an expert report. That same day, Defendants filed motions for summary judgment. The district court granted the motion to exclude and the motions for summary judgment.

The district court excluded Lockhart as Plaintiffs' expert witness because Plaintiffs failed to comply with their obligation to produce an expert report. And the court found that Plaintiffs' failure to comply with its disclosure obligations was neither substantially justified nor harmless. The district court then granted Defendants' motions for summary judgment, finding that Plaintiffs had "failed to put forth any expert evidence that identifies any specific portions of the code that they claim are protectible." R. 106, PageID 4118.

After Plaintiffs appealed, we dismissed the appeal for lack of appellate jurisdiction, holding that the district court's decision was not final because the court had not disposed of Multiject and Elder's amended counterclaim. *RJ Control II*, 2023 WL 2785764, at *2.

The district court then dismissed the pending counterclaim without prejudice. Plaintiffs timely appealed.

## II.

We begin with some of the basics of copyright law. The U.S. Constitution authorizes Congress to "secur[e] for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. With that authority, Congress has passed laws granting exclusive copyrights to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). The term "original" means "the work was independently created by the author" and "possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation omitted). Copyright protection "grants an author an exclusive right to produce his work . . . to encourage the production of works that others might reproduce more cheaply." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1195 (2021).

Although a copyright owner enjoys various exclusive rights, *see* 17 U.S.C. § 106, "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected," *Feist Publ'ns*, 499 U.S. at 348. To that end, Congress has placed limits on copyright protection: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Thus, "copyrights protect 'expression' but not the 'ideas' that lie behind it." *Google*, 141 S. Ct. at 1196; *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). And, as we have explained, "the task of separating expression from idea in this setting is a vexing one." *Lexmark*, 387 F.3d at 535.

The Computer Software Copyright Act of 1980 extended copyright protection to computer programs. *Google*, 141 S. Ct. at 1196. The Act defines a "computer program" as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C. § 101.

If a person improperly copies the work of a copyright owner, the copyright owner can seek relief by pursuing a copyright-infringement claim. To succeed on a copyright-infringement

claim, the claimant must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns*, 499 U.S. at 361. The second element, at issue here, "tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." *Lexmark*, 387 F.3d at 534. To determine if a work is entitled to copyright protection, courts consider several "qualifications," including two that are relevant here: the doctrines of merger and "scenes a faire." *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, 93 F.4th 985, 989–90 (6th Cir. 2024). We discuss these doctrines in more detail in Part III.C below.

## III.

On appeal, Plaintiffs raise three issues: (1) whether we lacked jurisdiction to decide *RJ Control I*; (2) whether the district court abused its discretion in excluding Lockhart as an expert witness following Plaintiffs' failure to provide an expert report; and (3) whether the district court erred in granting summary judgment to Defendants. We take each issue in turn.

## A.

*RJ Control I.* Plaintiffs seek vacatur of our decision in *RJ Control I*. As mentioned above, in *RJ Control II*, we dismissed Plaintiffs' appeal for lack of jurisdiction because, at the time of the appeal, Multiject and Elder's amended counterclaim remained pending in the district court. 2023 WL 2785764, at *2. This necessarily means that we also lacked appellate jurisdiction when we decided *RJ Control I* because the amended counterclaim was pending at the time of that decision as well. Therefore, we will vacate our decision in *RJ Control I*. Still, we affirm the district court's grant of summary judgment to Defendants on Plaintiffs' copyright-infringement claim related to the technical drawings for the reasons provided in *RJ Control I*, as Plaintiffs do not argue that the *RJ Control I*'s decision on that claim was erroneous. 981 F.3d at 454–57.

Plaintiffs also request that we vacate "all dispositive rulings by the district court based on" *RJ Control I*. D. 37 at p.37. But there is no basis for doing so. And Plaintiffs offer none. The district court had jurisdiction at the time(s) it issued any "dispositive rulings."

**B.**

*Motion to Exclude Plaintiffs' Expert.*  Next, we consider whether the district court abused its discretion in disqualifying Plaintiffs' proposed expert witness.  We review the exclusion of expert testimony under Federal Rule of Civil Procedure 37(c)(1) for an abuse of discretion. *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004). The "district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard."  *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019) (quoting *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998)).

Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to disclose expert witnesses. If a party relies on a retained expert witness (like Lockhart), in addition to disclosing the expert, the party must produce an expert report that includes the expert's qualifications, opinions, and the information the expert relied on for his opinion.  Fed. R. Civ. P. 26(a)(2)(B).

Rule 26(a)(2) also outlines timing requirements for expert disclosures.  The default deadline for expert disclosures is "at least 90 days before the date set for trial or for the case to be ready for trial."  Fed. R. Civ. P. 26(a)(2)(D)(i).  The district court can modify the default deadline by court order.  Fed. R. Civ. P. 26(a)(2)(D).

The district court ordered the parties to disclose their experts by February 26, 2021. Plaintiffs timely served their expert disclosures on Defendants by that deadline, identifying Lockhart as their retained "expert in industrial control system design, engineering, and integration including, but not limited to, control panel design, implementation, programming, performance, and integration as well as concept development and evaluation."  R. 93-8, PageID 3341–42.  But Plaintiffs did not produce an expert report.  Instead, Plaintiffs stated that "[f]urther substance and basis of Mr. Lockhart's opinions will be provided once the [district c]ourt rules on Plaintiff's Motion to Compel Discovery [ECF No. 54], in accordance with the Court's further scheduling order(s), and in accordance with Fed. R. Civ. P. 26(a)(2) and Fed. R. Civ. P. 26(e)." *Id.* at 3342.

Plaintiffs never supplemented their expert disclosure or produced an expert report. And though the district court later extended the deadline to complete discovery, it did not extend the expert-disclosure deadline.

Because Plaintiffs failed to properly disclose Lockhart as an expert, the district court excluded him under Rule 37(c)(1). That rule bars a party from using information or a witness "to supply evidence on a motion, at a hearing, or at a trial" when the party fails to comply with Rule 26(a)'s requirements. Fed. R. Civ. P. 37(c)(1). The exclusion of such evidence is "automatic and mandatory" unless the offending party can show that its nondisclosure was substantially "justified or harmless." *Dickenson*, 388 F.3d at 983 (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)); *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

We have explained that district courts should consider five factors when assessing substantial justification and harmlessness. Those factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). "District courts have broad discretion in applying these factors and need not apply each one rigidly." *Bisig*, 940 F.3d at 219 (citation omitted).

In considering these factors, we hold that the district court did not abuse its discretion in excluding Lockhart as Plaintiffs' expert.

### 1. Surprise to the Opposing Party

Plaintiffs contend that the Defendants should not have been surprised about Lockhart's identity and anticipated testimony based on their expert disclosure. Although Defendants were aware of Lockhart's identity and the general areas of his alleged expertise, they had no idea about the nature of Lockhart's anticipated testimony, other than he intended to cover "the

Plaintiffs' code that was used in each control system . . . , industry standard practices for control systems and other external considerations, as well as the unique nature of Plaintiffs' code." R. 93-8, PageID 3342. Plaintiffs assert that their disclosure was sufficient because they provided Lockhart's "opinion regarding RSW and Multiject's infringing use of RJ Control's software code." D. 37 at p.29. But this misconstrues Plaintiffs' disclosure, which did not provide the substance of any of Lockhart's opinions or the bases and reasons for those opinions. Without more, it would be difficult for Defendants to combat Lockhart's opinions at trial. Indeed, the rules require more. *See Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) ("'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing 'a complete statement of all opinions' and 'the basis and reasons therefor.'" (quoting Fed. R. Civ. P. 26(a)(2)(B))).

Additionally, as the district court pointed out, Defendants would not have had an opportunity to depose Lockhart if the court denied the motion to exclude his testimony because the discovery period had long been closed. *See* Fed. R. Civ. P. 26(b)(4)(A). Therefore, Lockhart's trial testimony would have been a complete surprise to Defendants. The first *Howe* factor favors Defendants.

### 2. Ability to Cure Surprise & Disruption of Trial

Factors two and three also favor Defendants. The district court found that reopening discovery was the only way to cure the surprise to Defendants. Even though the district court had not set a trial date when it excluded Lockhart, it found that reopening discovery would cause disruptions because its "trial docket [was] extremely congested due to circumstances arising from the ongoing global pandemic," such that the court's "calendar restrictions [did] not permit the luxury of setting cases for trial when motion practice is all that might be necessary to bring the case to an efficient resolution." R. 106, PageID 4109. Indeed, "trial courts have inherent power to control their dockets. The timing of trials and docket control are matters best left to the discretion of the trial court." *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 516–17 (6th Cir. 2003) (citations omitted).

Keep in mind, this is not a scenario where Plaintiffs provided the expert report late. They never provided the report. This means the district court would have had to reopen discovery more than a year after the discovery deadline to allow Plaintiffs to produce the report and provide Defendants an opportunity to depose Lockhart. The parties have been litigating this case since 2016, and reopening discovery would reward Plaintiffs for their inability to obey the district court's orders while punishing Defendants. *Cf. EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019) (finding that allowing expert testimony would require the non-defaulting party "to bear the effort and expense necessary to cure [the plaintiff's] failure to disclose," which "would arguably reward [the plaintiff] for its untimeliness and does nothing to deter similar conduct from future litigants"); *Reese*, 527 F.3d at 1265 (affirming the district court's exclusion of expert affidavit when disclosure "almost seven weeks after the close of discovery foreclosed the defendants' opportunity to depose [the expert] and to obtain an expert of their own").

Even though we have held that being able to cross-examine an expert during trial helps to remedy surprise and limit disruptions during trial, *EQT Prod.*, 768 F. App'x at 469 (citing *Howe*, 801 F.3d at 749), cross-examination here would not be meaningful unless the court reopened discovery, which it was not obligated to do.

### 3. Importance of the Evidence

We have said that "this factor can cut both ways. The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Bisig*, 940 F.3d at 220 (quotation omitted). The district court determined that it needed expert evidence to resolve Plaintiffs' copyright-infringement claim. Even if expert evidence is not always indispensable to the resolution of copyright claims, Plaintiffs needed expert evidence to rebut the expert testimony Defendants presented in support of their motions for summary judgment, which the district court granted. *See, e.g.*, *EQT Prod.*, 768 F. App'x at 469 (finding that evidence was crucial when the plaintiff "lost on a substantial portion of its claim" because of the exclusion of evidence). This factor also weighs in Defendants' favor.

### 4. Explanation for Nondisclosure

Plaintiffs offer several reasons why their failure to provide an expert report was harmless or substantially justified. None has merit.

First, Plaintiffs argue that no harm or prejudice resulted from their failure because Defendants also did not produce reports for their experts. Plaintiffs' reliance on the fact that none of the parties provided expert reports does not show harmlessness or substantial justification for its failure to do so, particularly considering Defendants were not required to produce expert reports because they did not disclose any *retained* experts.

Second, Plaintiffs argue that Defendants should have done more outreach to obtain Lockhart's expert report. But Plaintiffs' attempt to place the onus on Defendants ignores Plaintiffs' responsibility to abide by the district court's orders and provide the required disclosures. After all, Plaintiffs chose to disclose Lockhart as an expert witness, and it was Plaintiffs' responsibility to manage and prosecute their case.

Third, Plaintiffs claim it was "impossible for Plaintiffs' expert to have reviewed and analyzed this discovery to include in any report" by the expert-disclosure deadline because the magistrate judge had not yet ruled on Plaintiffs' motion to compel discovery of copies of "the code that was used in each control produced by RSW." R. 98, PageID 3369. This argument also falls short: Rogers created the source code at issue and admitted he always had possession of it. Thus, as the district court found, "the undisputed record contradicts [Plaintiffs'] assertion that their experts' analysis of the codebase was delayed or obstructed by any late discovery production." R. 106, PageID 4112. And Lockhart did not need the code copies to identify portions of the source code that were protectable. At best, Lockhart could use the code copies to determine whether Defendants copied portions of the source code. But that does not answer the question of the protectability of the code.

Fourth, Plaintiffs' argument that they operated in good faith that they had until 90 days before trial to provide the report under Rule 26(a)(2)(D)(i)'s default expert-disclosure deadline is unavailing. As mentioned above, the default deadline applies only when there is no stipulation or court order addressing the deadline. *See* Fed. R. Civ. P. 26(a)(2)(D)(i). Here, the district

court entered a scheduling order setting February 26, 2021, as the expert-disclosure deadline. The district court's deadline governed, not the default deadline in the rules. Even though the district court modified some discovery deadlines, it never modified the expert-disclosure deadline. And Plaintiffs never requested an extension of that deadline. Under these circumstances, Plaintiffs were not substantially justified in failing to provide the report.

Fifth, Plaintiffs contend that they "reasonably misinterpreted" Rule 26(a)(2) and the district court's orders and made an "honest mistake" as to when the report was due, rendering any error harmless and excusing them from the automatic sanctions of Rule 37(c)(1). R. 98, PageID 3369, 3371. But even if Plaintiffs made an honest mistake about when the report was due, their failure to provide the report was not harmless. Although Defendants had notice that Lockhart was Plaintiffs' proposed expert witness, Defendants had no information about Lockhart's qualifications, opinions, and the bases for such opinions. *See Howe*, 801 F.3d at 747.

\*        \*        \*

In sum, application of the *Howe* factors supports the district court's decision to exclude Lockhart as an expert witness. Plaintiffs have failed to show that the district court abused its discretion in disqualifying Lockhart, as the court did not rely on clearly erroneous factual findings, misapply the law, or use an erroneous legal standard.

## C.

*Copyright-Infringement Claim.* Plaintiffs contend that the district court erred in granting Defendants' motions for summary judgment. We review a district court's grant of summary judgment de novo. *Joe Hand Promotions, Inc. v. Griffith*, 49 F.4th 1018, 1021 (6th Cir. 2022). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In response to a properly supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The resolution of Plaintiffs' copyright-infringement claim turns primarily on whether Plaintiffs needed expert evidence to defeat Defendants' motions for summary judgment. We have never held that we require expert evidence in all cases of copyright infringement of software code, and we will not do so today. We instead leave the decision "to the discretion of the trial court under Federal Rule of Evidence 702." *Stromback v. New Line Cinema*, 384 F.3d 283, 295 (6th Cir. 2004); *see also Kohus v. Mariol*, 328 F.3d 848, 857 (6th Cir. 2003) ("Rather, we leave it to the discretion of the district court to decide to what extent, if any, expert opinion, regarding the highly technical nature of computer programs, is warranted in a given case." (quoting *Comp. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.3d 693, 713 (2d Cir. 1992))). We have, however, opined that when considering the doctrines of merger and scenes a faire as they relate to a complex technology, "expert testimony is desirable, if not required." *Premier Dealer*, 93 F.4th at 990 (quotation omitted); *Kohus*, 328 F.3d at 856. And the district court is in the best position to determine whether it requires expert testimony. *See Kohus*, 328 F.3d at 857 ("Expert testimony will usually be necessary to educate the trier of fact in those elements for which the specialist will look.").

Here, the district court acted within its discretion by requiring expert testimony. The court determined that "without expert testimony the plaintiff will have difficulty or it may be even impossible for the plaintiff to establish a factual predicate for his argument that the software code is protectable." R. 113, PageID 4193. In doing so, the district court did not misconstrue our guidance on the use of expert evidence. *See Kohus*, 328 F.3d at 856 (noting that expert testimony would "likely be required" in that case to distinguish expression from idea under the merger doctrine); *Premier Dealer*, 93 F.4th at 990.

Plaintiffs argue that the district court violated their due-process rights by failing to inform them that expert evidence was required because "it was the duty of the court to give adequate notice to the parties that such expert evidence would be necessary." This argument fails as Plaintiffs provide no jurisprudential support for it. And they do not acknowledge that the district court had the discretion to require expert evidence under our caselaw. *See, e.g.*, *Kohus*, 328 F.3d at 856; *Stromback*, 384 F.3d at 295 (noting the district court's discretion in allowing expert testimony, especially where the subject matter is "complex or technical, such as a computer

program"). Also, the Federal Rules of Civil Procedure and Rules of Evidence provided Plaintiffs further notice of their obligations regarding expert testimony.

And if that were not enough, Plaintiffs had multiple warnings that they may need expert evidence in this case. The district court questioned (more than once) how it could determine copyrightability of the software program without expert evidence. Plaintiffs also must have known they needed it because they identified an expert witness. It was Plaintiffs' failure to comply with their discovery obligations that prevented them from using expert testimony in response to Defendants' motions for summary judgment. Simply put, Plaintiffs have failed to show that the district court erred by requiring expert evidence.

As the Plaintiffs presented no expert evidence to rebut Defendants' evidence, Defendants contend that the related doctrines of merger and scenes a faire operate to bar copyright protection for Plaintiffs' software code. We agree.

### 1. Merger Doctrine

The merger doctrine arises when there are limited ways to express an idea. *Premier Dealer*, 93 F.4th at 990. In those situations, "the idea and expression are said to have 'merged'" and the expression becomes unprotected. *Lexmark*, 387 F.3d at 535. The rationale behind the doctrine is that when there are only a few ways to express an idea, "the first author to create a work would prevent others from expressing the underlying idea." *Premier Dealer*, 93 F.4th at 990.

To distinguish between idea and expression in a software code, courts must undertake a line-by-line analysis to identify which lines are functional and whether such lines are intertwined with expressive lines. *See Lexmark*, 387 F.3d at 535; *Automated Sols. Corp. v. Paragon Data Sys.*, 756 F.3d 504, 520–21 (6th Cir. 2014); *Sega Enters., Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992). And if specific lines in the code "are the only and essential means of accomplishing a given task," the later copying of those lines is not infringement. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1360 (Fed. Cir. 2014) (quotation omitted). In other words, if unprotected elements are intertwined with any copyrightable elements, the unprotected elements

are stronger, and the expression will not be protected. *See Lexmark*, 387 F.3d at 535; *Murray Hill Publ'ns Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 318 n.2 (6th Cir. 2004).

In support of their motions for summary judgment, Defendants offered expert testimony from Thomas Rozich that the noncopyrightable and copyrightable elements of the software code are inextricably intertwined, and that the software "code is all functional." R. 93-7, PageID 3332. Rozich further testified that "[t]he code logic is essential to the idea of the expression because this is the only way the code will be able to make the parts work with each other." *Id.*

In response to Defendants' motions for summary judgment, Plaintiffs could offer no expert testimony and they failed to put forth a line-by-line analysis detailing which lines of the software code are functional and whether those lines intertwine with expressive lines. Instead, Plaintiffs offered Rogers's declaration, in which he generally claimed that the code "is the expression of [his] views about the unique functions to be performed by the Control System," noting that "[t]he options available to [him] as the source code author to design and implement [his] vision . . . are virtually limitless, with the possible combinations to express the intended result bound only by [his] creative process." R. 100-13, PageID 3537. According to Rogers, "[o]ne input is as good as another." *Id.* at 3540. But Rogers's declaration fails to create a genuine dispute of material fact as to the protectability of the code for two reasons.

First, Rogers's declaration is not expert evidence. Plaintiffs never disclosed Rogers as an expert witness and, as such, they did not comply with Rule 26(a)(2)(C). That Rule requires parties that use nonretained experts to make a disclosure with the "subject matter" of the expected testimony and "a summary of the facts and opinion" that serve as the basis for the expert's testimony. Fed. R. Civ. P. 26(a)(2)(C).

Second, even if we ignore that Rogers, as a lay witness, purports to offer expert testimony, his declaration does not identify any functional elements of the software code or provide specific details on the "expressive elements" of his code. *See Automated Sols.*, 756 F.3d at 520–21 (requiring expert declaration to "elaborate *which* portions of [the code] are unique, *what* makes them unique, or *why* their particular form is not dictated by practical realities"). Instead, he summarizes how general aspects of the code are expressive because they "reflect

[his] vision." R. 100-13, PageID 3537–38. Rogers refers to "without limitation, . . . the computer language the device supports, the internal capacity of the device that is programmable . . . , and elements to store the composition of the computer software" as "expressive elements unrelated to the basic function of the Control System[.]" *Id.* Rogers also claims the user interface and the order of functions for the user interface "are the result of [his] unique vision and design." *Id.* at 3538–39. But vague references to general portions of the code are insufficient. And despite Plaintiffs' argument that a line-by-line analysis "is a highly impractical and unreasonable exercise to undertake," we need such an analysis to determine which parts of the code, if any, are protectable. *See Lexmark*, 387 F.3d at 535 (citations omitted); *Automated Sols.*, 756 F.3d at 520–21. Furthermore, Rogers's declaration does not address whether the functional and expressive elements are inextricably intertwined.

Although Rogers attached lines of code and drawings to his declaration, we cannot interpret these lines of code to determine which parts of the code are protectable and which are not. Thus, Plaintiffs needed expert testimony and Rogers did not fill the gap. *See Automated Sols.*, 756 F.3d at 520–21; *United States v. White*, 492 F.3d 380, 400–01 (6th Cir. 2007) (noting that by amending Rule 701, "the drafters intended to preclude a party from surreptitiously circumventing the reliability requirements set forth in Rule 702 . . . through the simple expedient of proffering an expert in lay witness clothing and to ensure[] that a party will not evade the expert witness disclosure requirements" (alteration in original) (quotation omitted)). And despite Plaintiffs' arguments to the contrary, that an author can write a software program several ways does not automatically entitle the program to copyright protection. *See Lexmark*, 387 F.3d at 537 (finding error in the district court's determination that "because the Toner Loading Program could be written in a number of different ways, it was entitled to copyright protection" (quotation omitted)).

## 2.  Scenes a Faire Doctrine

Plaintiffs' claim faces a similar fate when we apply the scenes a faire doctrine. This doctrine "operates to bar certain otherwise creative expression from copyright protection." *Oracle*, 750 F.3d at 1363. "Scenes a faire arise when the expectations of an industry or subject matter require an author to express facts in a certain way, rendering only a few choices 'feasible

in that setting' even if alternatives theoretically remain." *Premier Dealer*, 93 F.4th at 990 (quoting *Lexmark*, 387 F.3d at 538). As to software programs specifically, "elements of a program dictated by practical realities—*e.g.*, by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices—may not obtain protection." *Lexmark*, 387 F.3d at 535 (citations omitted). In evaluating a copyright, courts may look at external considerations such as industry standard practices. *Kohus*, 328 F.3d at 856. If an expression is standard or commonplace in the industry, then copyright protection may not be obtained. *See Lexmark*, 387 F.3d at 535–36 (citation omitted).

Rogers testified that although limited changes were made between previous versions of the design and Design 3, such changes were made to accommodate new components—a different controller, a new display, and a new communications protocol (Etherlink). Rogers admitted that these changes were made "[b]ecause the components that [they] were using were not available anymore or were not going to be available anymore." R. 100-14, PageID 3601. Defendants' experts confirmed as much in their affidavits. Therefore, even considering the evidence in a light most favorable to Plaintiffs as we must, the software code is not protectable.

Looking to industry standard practices does not change this result. Defendants' experts noted several aspects of the code that were dictated by standard programming procedure. On the other hand, Plaintiffs did not provide any expert evidence on industry standard practices, relying only on Rogers's statement in his declaration that such practices do not exist. As such, they failed to provide sufficient evidence to survive summary judgment.

\*     \*     \*

Plaintiffs have failed to create a genuine dispute of fact about the protectability of the software code. Therefore, the district court did not err in granting summary judgment to Defendants on the copyright-infringement claim.

**IV.**

For the foregoing reasons, we **AFFIRM** the district court's judgment. We **VACATE** our prior decision in *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446 (2020). And we **DENY** the motion to supplement the appellate record with the transcript of the oral argument from *RJ Control II*.